IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES QUINN, Derivatively on Behalf of
Nominal Defendant APPLE REIT TEN, INC.,
Plaintiff,

v.                                                                   Civil Action No. 3:16-cv-610

GLADE M. KNIGHT et al.,
Defendants.

## OPINION

The plaintiff, James Quinn, brings this derivative lawsuit alleging the defendants' breached their fiduciary duties to the shareholders of Apple REIT Ten, Inc. ("Apple Ten") in the merger of Apple Ten and Apple Hospitality REIT, Inc. ("Apple Hospitality"). The Court heard oral argument on Quinn's motion for a preliminary injunction and denied the motion. The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 23.1, arguing that Quinn cannot fairly and adequately represent Apple Ten. Subsequently, the Apple Ten defendants[1] and the Apple Hospitality defendants[2] brought separate motions to dismiss for lack of standing and for failure to state a claim. The Court finds that Quinn has standing to fairly and adequately represent Apple Ten in this derivative action because he represents the interests of the Apple Ten shareholders and owned stock in Apple Ten at the time of the alleged wrongdoing. Additionally, neither the Apple Ten shareholder's vote in favor of the merger, the Virginia Statute on Limitations of Remedies, nor Apple Ten's Articles of Incorporation bars this suit.

---

[1] The Apple Ten defendants are Glade Knight, Kent Colton, R. Garnett Hall, David Adams, and Anthony Keating.

[2] The Apple Hospitality defendants are David Buckley, Kristian Gathright, Justin Knight, David McKenney, Bryan Peery, and Apple Hospitality.

Quinn also adequately pleads claims against the Apple Hospitality defendants for aiding and abetting the Apple Ten defendants' breach of fiduciary duties.

## I. BACKGROUND

The heart of the alleged misconduct involves Glade Knight, the Executive Chairman of Apple Hospitality, and his son, Justin Knight, the President of Apple Ten and President and CEO of Apple Hospitality. Quinn says that Glade and Justin Knight sought the merger of Apple Ten and Apple Hospitality because it triggered a conversion of Apple Ten series B stock and made Glade Knight close to sixty-five million dollars in the process. Glade Knight utilized the highly overlapping executive boards of each company, fueled by millions of dollars in special compensation to Apple Hospitality officers, to push through the merger.

Although Apple Ten established a Special Committee to consider the merger, its members had long-time relationships with Glade Knight and had served on the boards of prior Apple REIT companies. These considerations compromised the Special Committee's ability to act independently on behalf of Apple Ten. Essentially, Quinn says that the Special Committee members knew about Glade Knight's financial interests in the merger and had incentives to help Knight, not to protect Apple Ten. The Special Committee, therefore, engaged in superficial negotiations in which they bowed to the desires of Apple Hospitality. The Committee members failed to inform themselves as to Apple Ten's true value. They hired non-independent financial and legal advisors with ties to the Knight family and refused to explore any third-party acquisition options prior to signing a deal with Apple Hospitality. Further, the Committee failed to provide full financial disclosures to Apple Ten's shareholders about the worth of Apple Ten shares. These actions resulted in a severe under-valuation of Apple Ten by Apple Hospitality and denied Apple Ten's shareholders fair compensation for their shares. Further, Quinn says that

Apple Hospitality's officers and directors knew of the Apple Ten defendants' breaches of fiduciary duty, but participated in the tainted negotiations because they stood to make millions of dollars from the merger.

Following this Court's denial of the preliminary injunction motion, the Apple Ten shareholders approved the merger. Quinn, who owned stock in both companies prior to the merger, now seeks damages for the defendants' breach of fiduciary duties and injunctive relief rescinding the merger.

## II. DISCUSSION

### A. Quinn Has Standing to Bring a Derivative Suit

A shareholder derivative suit deputizes shareholders to protect themselves "from the designing schemes and wiles of insiders who are willing to betray their company's interests in order to enrich themselves." *Simmons v. Miller*, 261 Va. 561, 573, 544 S.E.2d 666, 674 (2001) (quoting *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966)). Virginia law requires that "suits for breach of fiduciary duty against officers and directors must be brought derivatively on behalf of the corporation and not as individual shareholder claims." *Id.* at 576, 544 S.E.2d at 675. A plaintiff must satisfy a number of procedural hurdles in order to bring a derivative action. First, the plaintiff must "fairly and adequately represent[ ] the interests of the corporation." Va. Code Ann. § 13.1-672.1. Second, a plaintiff "shall not commence or maintain a derivative proceeding unless the shareholder . . . was a shareholder of the corporation at the time of the act or omission complained of."[3] *Id.*

---

[3] Third, a plaintiff must make a written demand on the corporation, which the parties do not dispute in this case. Va. Code Ann. § 13.1-672.1(A).

*i. Quinn Adequately and Fairly Represents the Interests of Apple Ten*

Although Quinn owns stock in in both Apple Ten and Apple Hospitality, he can nonetheless fairly and adequately represent the interests of Apple Ten in this derivative lawsuit.[4] Virginia law and the Federal Rules of Civil Procedure require a plaintiff to fairly and adequately represent the interests of shareholders in enforcing the rights of the corporation. *See* Fed. R. Civ. P. 23.1; Va. Code Ann. § 13.1-672.1(A)(4). When determining the adequacy of representation, courts consider a number of factors including (1) the economic antagonisms between the derivative claimant and the rest of the shareholders; (2) the remedies sought; (3) indications that the plaintiff is not the driving force behind the litigation; and (4) the degree of support received from the shareholders. *See Argiropoulos v. Kopp*, No. CBB-06-0769, 2007 U.S. Dist. LEXIS 22351, at *20-22 (D. Md. Mar. 26, 2007) (citing *Davis v. Comed, Inc.*, 619 F.2d 588, 593-94 (6th Cir. 1980)). Further, "a plaintiff is not necessarily disabled to bring suit simply because some of his interests extend beyond that of the class . . . ." *Davis*, 619 F.2d at 593.

Neither party cited, nor did this Court find, caselaw stating that stock ownership in both sides of a merger prevents a plaintiff from maintaining a derivative action. Despite the fact that Quinn owned more Apple Hospitality stock than he owned of Apple Ten stock prior to the merger, the parties have not submitted any evidence to show that Quinn does not stand to benefit, overall, from winning this case. From a financial perspective, there is no evidence that if Apple Hospitality paid more for Apple Ten's shares that it would harm Apple Hospitality's stock price. Further, even if Apple Hospitality were to suffer some financial loss, there is no evidence that a

---

[4] The Court may properly consider this fact not mentioned in the complaint and courts have determined that it is best to address issues of derivative standing early in an action. *See Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 136 (S.D.N.Y. 1991). Ultimately, even in considering this fact outside of the pleadings, the dual ownership fails to strip Quinn's derivative standing.

favorable outcome for Apple Ten shareholders would not overcome any loss Quinn suffered as an Apple Hospitality shareholder. Further, Quinn maintains that he brings this action as a check on the Knights, who manage and direct Apple Hospitality. This interest aligns Quinn with the Apple Ten shareholders who had their Apple Ten stock converted to Apple Hospitality stock following the merger. Thus, Quinn's economic interests do not create conflicting economic antagonisms which prevent him from adequately representing the interests of Apple Ten.

The rest of the factors also weigh in favor of Quinn's ability to fairly and adequately represent the interests of Apple Ten. First, Quinn now seeks remedies to hold the defendants accountable for the alleged breaches of fiduciary duty and to rescind the merger if the shareholders voted without adequate financial disclosures. Next, Quinn has demonstrated that he is in fact the driving force of this litigation, in which he sought out financial and legal counsel concerning the deal and has committed substantial time and effort towards the prosecution of this case. Finally, although other Apple Ten shareholders have not joined this suit, this fact alone does not prevent Quinn from maintaining his derivative claims.

### ii. Quinn Owned Apple Ten Stock at the Time of the Act Complained Of

Virginia law states that "a shareholder shall not commence or maintain a derivative proceeding unless the shareholder . . . was a shareholder of the corporation at the time of the act or omission complained of." Va. Code Ann. § 13.1-741.1(A). The Supreme Court of Virginia has stated that it is "bound by the plain meaning" of statutory language when "the language is clear and unambiguous." *Cummings v. Fulghum*, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001). Canons of statutory interpretation counsel a plain-meaning interpretation of the statute which does not require a plaintiff to maintain continuous stock ownership from the moment of the

alleged wrong to the conclusion of litigation, and Quinn's ownership of stock at the time of the alleged wrong satisfies the statute.

## B. The Complaint States Claims Upon Which Relief Can be Granted[5]

### i. *The Apple Ten Shareholder's Vote in Favor of the Merger Does Not Bar this Litigation*

As a general rule, shareholder ratification can act as "a bar to the right of the plaintiff to bring the suit for the benefit of the corporation." *See Koch v. Seventh St. Realty Corp.*, 205 Va. 65, 70, 135 S.E.2d 131, 134 (1964). In *Koch*, the defendants acted in allegedly self-dealing contracts, which a majority of shareholders then voted on and approved. *Id.* The Supreme Court of Virginia determined that the voter approval barred the derivative suit, but did not consider the issue of whether the shareholders acted on an informed basis. *Id.* Delaware courts addressing this issue have highlighted that shareholder ratification only serves as a bar to litigation where the majority of "fully informed" shareholders approved the actions. *Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 306 (Del. 2015); *Gantler v. Stephens*, 965 A.2d 695, 714 (Del. 2009) ("[B]ecause we have determined that the complaint states a cognizable claim that the Reclassification Proxy was materially misleading . . . that precludes ruling at this procedural juncture, as a matter of law, that the Reclassification was fully informed. Therefore, the approving shareholder vote did not operate as a 'ratification' of the challenged conduct in any legally meaningful sense."). In this case, the complaint alleges that defendants' actions prevented shareholders from voting on an informed basis due to the missing information about the defendants' financial interests in the merger and the alleged incomplete financial information

---

[5] To survive a 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim or judging the applicability of any defenses raised by the non-moving party. *Republican Party of N.C. v. Martin*, 960 F.2d 943, 952 (4th Cir. 1992).

in the proxy statements. At the motion to dismiss stage, Quinn has adequately alleged facts demonstrating a plausible claim that the shareholders lacked access to pertinent facts when they approved the merger, and their approval does not bar this derivative action.

### ii. *Quinn Can Maintain this Action Despite Virginia's Statute on Limitations of Remedies*

Under Virginia law, "the legality of a proposed or completed corporate action described in subsection A of § 13.1-730 may not be contested, nor may the corporate action be enjoined, set aside or rescinded, in a legal or equitable proceeding by a shareholder after the shareholders have approved the corporate action." Va. Code Ann. § 13.1-741.1(A). The statute does not bar lawsuits such as this one where the complaint seeks not only equitable relief declaring the merger unlawful but also seeks damages resulting from the defendants' alleged breach of fiduciary duties. Quinn can maintain his claim for breach of fiduciary duties even if he cannot ultimately obtain one of the various remedies sought, and the Court will not dismiss a remedy at the motion to dismiss stage. *See Facchetti v. Vest, et al.*, Civ. Action No. 5:15-cv-49-EKD, (W.D. Va. July 18, 2016) ("Rule 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety." ) (collecting cases). Further, the statute does not apply to corporate action "procured as a result of fraud, a material misrepresentation, or an omission of a material fact necessary to make statements made, in light of the circumstances in which they were made, not misleading." *Id.* The Court need not decide at this time whether this exception applies.

### iii. *Apple Ten's Articles of Incorporation Do Not Bar this Case*

Virginia law allows for a corporation to limit or eliminate the liability of its directors and officers so long as they do not engage "in willful misconduct or a knowing violation of the criminal law or of any federal or state securities law, including, without limitation, any claim of

unlawful insider trading or manipulation of the market for any security." Va. Code Ann. § 13.1-692.1.  Neither party disputes that Apple Ten's Articles of Incorporation provide such protections, and the Court may take judicial notice of those Articles. *See Capital Associated Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 289 (M.D.N.C. 2015).  An action constitutes "willful misconduct if the actor commits an intentional act or omission that is wrongful, regardless of whether the injury was intended." *DCG&T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 588 (E.D. Va. 2014) (citing *In re LandAmerica Fin. Grp., Inc.*, 470 B.R. 759, 785 (Bankr. E.D. Va. 2012)).  The complaint alleges that the defendants intentionally favored the interests of corporate insiders, failed to inform themselves of the true value of Apple Ten's shares, engaged in a conflicted negotiation and decision-making process, and failed to inform the shareholders of the Apple Ten's real worth.  Taking the allegations in the complaint as true, the plaintiff states a plausible claim that the defendants acted willfully in the best interests of themselves and the Knights instead of the best interests of Apple Ten and its shareholders.

### iv. The Complaint States a Claim Against the Apple Hospitality Defendants

The Supreme Court of Virginia has not formally recognized a cause of action for aiding and abetting a breach of fiduciary duties, but has stated that, were the cause of action to exist, it would require that the defendant had "actual knowledge" of the other's breach of fiduciary duty and that the defendant knowingly participated in the breach. *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 659-60 (2004).  Further, "even if this claim is not to be treated as a separate tort, it appears to be a viable alternative theory to secure joint liability." *All. Tech. Grp. V. Achieve 1, LLC*, Civ. Action, No. 3:12CV701-HEH, 2013 WL 143500, at *5 (E.D. Va. Jan. 11, 2013) (determining that to state a claim for aiding and abetting, a plaintiff must plead that a defendant: "(1) knows about another's duty and breach; (2) participated in or directs its commission; and (3)

8

benefits from it"). The allegations in the complaint satisfy these requirements, alleging that the Apple Hospitality defendants knew of Glade Knight's financial interests in the merger, engaged in sham negotiations regarding Apple Ten's purchase, and benefited either through special compensation from Glade Knight or by winning his favor. It is true, as the defendants' contend, that the Apple Hospitality defendants had fiduciary duties of their own to Apple Hospitality shareholders, but this alone does not prevent them from meeting the elements of aiding and abetting another's breach of duties. The Court will not dismiss the claim at this stage of the litigation.

### III. Conclusion

For these reasons, the Court DENIES the defendants' motions to dismiss.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: <u>November 1, 2016</u>
Richmond, VA

/s/
_____
John A. Gibney, Jr.
United States District Judge