**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| JAMES QUINN, Derivatively on Behalf of Nominal Defendant APPLE REIT TEN, INC., <br><br> Plaintiff, <br><br> v. <br><br> GLADE M. KNIGHT, JUSTIN KNIGHT, KENT W. COLTON, R. GARNETT HALL, JR., DAVID J. ADAMS, ANTHONY F. KEATING III, DAVID BUCKLEY, KRISTIAN GATHRIGHT, DAVID MCKENNEY, BRYAN PEERY, and APPLE HOSPITALITY REIT, INC., <br><br> Defendants, <br><br> and <br><br> APPLE REIT TEN, INC., <br><br> Nominal Defendant. | Case No. 3:16-cv-00610-JAG |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL**
**APPROVAL OF THE SETTLEMENT AND PLAN OF DISTRIBUTION**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    FACTUAL BACKGROUND ......................................................................... 3

III.   THE SETTLEMENT WARRANTS FINAL APPROVAL ................................. 6

       A.     The Standards for Final Approval of a Derivative Settlement .............. 6

       B.     An Analysis of the *Jiffy Lube* Fairness Factors Demonstrates That the
              Settlement Is Fair and Warrants Final Approval ...................................... 8

              1.     The Case Was Settled on the Eve of Trial ................................. 8

              2.     The Extent of Discovery Completed at the Time of Settlement
                     Weighs in Favor of the Settlement's Fairness ........................... 9

              3.     The Circumstances Surrounding the Settlement Negotiations
                     Support the Fairness of the Settlement ...................................... 11

              4.     The Experience of Counsel Further Supports the Fairness of the
                     Settlement ................................................................................. 12

       C.     An Analysis of the *Jiffy Lube* Adequacy Factors Demonstrates That the
              Settlement Is Adequate and Warrants Final Approval ......................... 13

              1.     The Relative Strengths of Plaintiff's Case on the Merits and the
                     Risks of Establishing Liability and Damages Favor Approval ........ 14

                     a.     Risks in Establishing Liability ...................................... 15

                     b.     Risks in Ability to Prove Damages ............................... 18

                            (1)    Increased Merger Consideration ...................... 19

                            (2)    Unjust Enrichment ........................................... 20

                            (3)    The Settlement Represents A Substantial
                                   Percentage of Plaintiff's Available Damages ................. 21

              2.     The Anticipated Duration and Expenses of Additional Litigation
                     Supports Approval .................................................................... 22

              3.     The Solvency of Defendants and Likelihood of Recovery of a
                     Litigated Judgment Supports the Adequacy of the Settlement ................ 24

4.     The Lack of Opposition to the Settlement Weighs in Favor of its Approval ................................................................................................ 24

IV.    THE PROPOSED PLAN OF DISTRIBUTION IS FAIR AND REASONABLE ........... 25

V.     NOTICE TO FORMER APPLE TEN SHAREHOLDERS SATISFIED THE REQUIREMENTS OF RULE 23.1 AND DUE PROCESS ........................................... 26

VI.    CONCLUSION ............................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Capital S'holder Derivative Litig.*,
    No. 11-2424, 2013 WL 3322294 (D. Md. June 28, 2013).....................................13

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)..................................................................10

*DCG&T ex rel. Battaglia/Ira v. Knight*,
    68 F. Supp. 3d 579, 587 (E.D. Va. 2014) .......................................................17, 21

*DCG&T ex rel. Battaglia/Ira Knight*,
    No. 3:14-cv-00067-JAG (E.D. Va. Sept. 15, 2015)............................................21

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993)...........................................................................26, 27

*Burke v. Shapiro, Brown & Alt, LLP*,
    No. 3:14-cv-838, 2016 WL 2894914 (E.D. Va. May 17, 2016) (Novak, J.) ................. *passim*

*DeWitt v. Darlington Cty., S.C.*,
    No. 11-cv-740, 2013 WL 6408371 (D.S.C. Dec. 6, 2013) .....................................8

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) ........................................................................24

*In re Genworth Fin. Sec. Litig.*,
    No. 3:14-cv-682, 2016 WL 5400360 (E.D. Va. Sept. 26, 2016) (Gibney, J.) ................ *passim*

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ....................................................................... *passim*

*Kirven v. Cent. States Health & Life Co.*,
    No. 11-cv-2149, 2015 WL 1314086 (D.S.C. Mar. 23, 2015)..................................14

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ............................................................ *passim*

*In re The Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ................................................................... *passim*

*Muhammad v. Nat'l City Mortg.*,
    No. 07-cv-423, 2008 WL 5377783 (S.D. W.Va. Dec. 19, 2008) ..............................8

*In re NeuStar, Inc. Sec. Litig.*,
No. 14-cv-885, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015) .............................................11

*Orman v. Am. Online, Inc.*,
No. 97-cv-264-A (E.D. Va. Dec. 14, 1998) ....................................................................22

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir.1995) ...........................................................................................15

*Poth v. Russey*,
281 F. Supp. 2d 814 (E.D. Va. 2003) ...........................................................................15

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,
506 A.2d 173, 182 (Del. 1986) .....................................................................................17

*SunTrust Bank v. Farrar*,
675 S.E.2d 187 (Va. 2009)............................................................................................20

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
No. 08-cv-00271, 2012 WL 2370523 (D.S.C. June 22, 2012) .................................8

*Willard, ex rel. Moneta Bldg. Supply, Inc. v. Moneta Bldg. Supply, Inc.*,
515 S.E.2d 277 (Va. 1999)...................................................................................15, 16, 17

*Winingear v. City of Norfolk, Va.*,
No. 12-cv-560, 2014 WL 3500996 (E.D. Va. July 14, 2014).................................9

*Zimmerman v. Bell*,
800 F.2d 386 (4th Cir. 1986) .................................................................................7, 14

**Statutes**

Va. Code § 13.1-672.1(B)................................................................................................3, 23

Va. Code § 13.1-690 .......................................................................................................15, 16

**Rules**

Fed. R. Civ. P. 23.1 .......................................................................................................... *passim*

**Other Authorities**

Laarni T. Bulan, et al, *Securities Class Action Settlements, 2015 Review and Analysis*
(Cornerstone Research 2016)..........................................................................................14

Plaintiff James Quinn ("Plaintiff"), by and through his undersigned counsel ("Plaintiff's Counsel" or "Counsel") and pursuant to Federal Rule of Civil Procedure ("Rule") 23.1, respectfully submits this Memorandum of Law in Support of his Motion for Final Approval of the Settlement and Plan of Distribution in this shareholder derivative action brought on behalf of Apple REIT Ten, Inc. ("Apple Ten").[1]

## I.  <u>INTRODUCTION</u>

Plaintiff, through his Counsel, has obtained a Settlement of $32 million (the "Settlement Fund") in cash for the benefit of former Apple Ten shareholders.[2]  The Settlement is the product of hard-fought litigation and followed intensive arms-length negotiations, spanning two separate mediation sessions before the Honorable Magistrate Judge David J. Novak ("Judge Novak"). Indeed, at the time the Settlement was reached, the Parties had fully developed the factual record and had nearly concluded preparations for trial, which was scheduled to commence twelve days after the second mediation.  This Settlement is the largest derivative settlement in the Fourth Circuit, and the recovery represents a meaningful percentage of the total damages that could have been recovered at trial.

As described herein, and in the accompanying Declaration, the Settlement is an excellent result for Apple Ten and its former shareholders and provides a significant and certain recovery in a case that presented numerous legal challenges and risks.  While Plaintiff and his counsel believe that the claims asserted against Defendants were meritorious, they also recognized that

---

[1] All capitalized terms that are not defined in this memorandum have the same meanings as defined in the Amended Stipulation and Agreement of Settlement dated as of December 7, 2016 (ECF No. 149-1) (the "Stipulation"). Unless otherwise noted, all emphasis in quotations is added, and internal quotation marks, citations, and footnotes are omitted.

[2] The procedural background and facts that support this Motion are set forth in detail in the Declaration of Robin Winchester in Support of Plaintiff's Motions for Final Approval of the Settlement and for Award of Attorneys' Fees and Payment of Litigation Expenses and to Approve Plaintiff's Case Contribution Award ("Declaration" or "Decl."), filed herewith.

they faced substantial challenges to obtaining recovery. Indeed, although Plaintiff was able to defeat Defendants' motions to dismiss, there was no guarantee that Plaintiff would have successfully prevailed on Defendants' pending summary judgment motions, or would have been successful at trial before a jury. This is especially true given the complex nature of the claims and damages at issue in the Action. Both Plaintiff and Defendants would have been required to rely heavily on expert testimony at trial − leading to an inevitable "battle of the experts." This Court well knows that success in such a battle in a jury trial is far from guaranteed. Moreover, even if Plaintiff were successful in proving liability and damages at trial, Defendants would surely appeal any judgment in favor of Plaintiff, and the outcome of any appeal was uncertain.

This Action was extremely hard-fought in a short time frame. Plaintiff served his demand letter on the Apple Ten Board of Directors on June 22, 2016 and filed his Complaint on July 19, 2016. During the next four months, the Action proceeded through preliminary injunction proceedings (including expedited discovery), a contested motion to dismiss, full fact and expert discovery, partial summary judgment briefing, the submission of motions *in limine* and other pretrial submissions and settled on the eve of trial. Thus, at the time Plaintiff agreed to settle, he had developed a full and clear understanding of the strengths and weaknesses of the claims and defenses asserted in the Action. As a result of these efforts, Plaintiff's Counsel were well-informed when they negotiated the Settlement, which they believe is an excellent result in light of the risks of continued litigation.

The reaction of the former Apple Ten shareholders thus far also supports the Settlement. In accordance with the Court's December 8, 2016 Preliminary Approval Order (ECF No. 150), the Court-approved Claims Administrator, Strategic Claims Services, has mailed over 23,000 copies of the Notice to former Apple Ten shareholders. *See* Affidavit of Josephine Bravata

Concerning the Mailing of Notice of Pendency and Settlement of Derivative Action ("Bravata Aff.") ¶¶ 4-5. All objections to the Settlement, the Plan of Distribution, or the request for attorneys' fees and expenses are due to be received no later than March 1, 2017. To date, despite Plaintiff's Counsel fielding more than 150 calls from Apple Ten shareholders, Plaintiff's Counsel is not aware of any objections.

In light of the foregoing and all of the considerations to be discussed below, Plaintiff and Plaintiff's Counsel firmly believe that the $32 million Settlement is eminently fair, reasonable, and adequate, easily satisfies the standards of Rule 23.1 and the factors considered by courts in this Circuit when approving settlements, and provides an excellent result for the former shareholders of Apple Ten. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement and approve the Plan of Distribution as a fair and reasonable method for distributing the Net Settlement Fund.

## II. FACTUAL BACKGROUND

This derivative action arises from the Merger of Apple Hospitality (acquirer) with Apple Ten (target) that was announced on April 13, 2016. In accordance with Va. Code § 13.1-672.1(B), on June 22, 2016, Plaintiff's Counsel sent a letter to the Apple Ten Board on behalf of Plaintiff demanding that it investigate and remedy potential breaches of fiduciary duty and certain conflicts relating to the Merger. The Demand letter alleged, *inter alia*, that the Merger was the product of a conflict-riddled process designed to favor the interests of Glade Knight, the founder, Chairman, and CEO of Apple Ten and the founder and Executive Chairman of Apple Hospitality, and certain of Apple Ten/Apple Hospitality's directors and executives at the expense of Apple Ten and its shareholders, who would receive as Merger consideration an amount below the fair value of Apple Ten common shares.

On July 15, 2016, Apple Ten filed with the SEC its definitive proxy statement (the "Proxy") and set a special meeting date of August 31, 2016 for both Apple Ten and Apple Hospitality's shareholders to vote on the Merger. Because the vote on the Merger was scheduled to take place in less than six weeks and in light of the Apple Ten Board's failure to respond to the Demand Letter, on July 19, 2016, Plaintiff filed his Verified Shareholder Derivative Complaint ("Complaint") in this Court.

The Complaint asserted two claims: (1) breach of fiduciary duty of loyalty and good faith against the members of the Apple Ten Board (defendants Glade M. Knight, Kent W. Colton ("Colton"), R. Garnett Hall, Jr. ("Hall"), David J. Adams ("Adams") and Anthony F. Keating III ("Keating")) for (a) approving the Merger, which the Complaint alleged was unfair to Apple Ten and its shareholders, and (b) knowingly issuing materially false, incomplete and misleading statements in the Proxy in solicitation of the votes of Apple Ten shareholders; and (2) aiding and abetting those breaches of fiduciary duty against Apple Hospitality and defendants Justin Knight, David McKenney ("McKenney"), Kristian Gathright ("Gathright"), Bryan Peery ("Peery") and David Buckley ("Buckley"), who were executive officers of both Apple Ten and Apple Hospitality. The Complaint also sought equitable relief to enjoin the special meeting of Apple Ten shareholders scheduled for August 31, 2016.

The Complaint alleged that Glade Knight orchestrated an artificial, non-competitive negotiation process conducted on one side by a Special Committee stacked with Glade Knight's long-time friends (defendants Colton, Hall and Adams) and on the other side by Apple Ten/Apple Hospitality management who stood on both sides of the Merger, including Glade Knight's son Justin Knight, the President of Apple Ten and CEO and director of Apple Hospitality. The Complaint also alleged that the Special Committee predetermined from the

outset to approve Apple Hospitality's acquisition of Apple Ten on terms favorable to Glade Knight. For example, Plaintiff alleged that the Special Committee engaged in a dysfunctional negotiation with Apple Hospitality, whereby the Special Committee simply gave away its negotiating leverage in exchange for nothing, failed to inform itself of several key issues that would have resulted in an increased value of Apple Ten, and ignored the advice of its advisors.

The Complaint further alleged that the Merger served primarily to allow Glade Knight and his management team to cash out the "Series B shares," for which they would receive a significant windfall. Glade Knight owned all 480,000 issued and outstanding shares of Apple Ten Series B preferred stock, which he acquired for $0.10 each when Apple Ten was formed. As a result of the Merger, the Series B shares would receive a special windfall payment totaling approximately $65 million, and Glade Knight assigned $16 million of that amount to his long-time associates who were executives of both Apple Ten and Apple Hospitality, including his son Justin Knight.

This Action was actively and vigorously litigated by Plaintiff's Counsel. Defendants vigorously denied, and continue to deny, all allegations of wrongdoing, or that they have committed any act or omission giving rise to any liability or violation of law. Prior to engaging in expedited discovery in advance of Plaintiff's P.I. Motion, the Parties participated in an initial mediation with Judge Novak on August 4, 2016 that did not result in a settlement.

Thereafter, from August through the second mediation with Judge Novak on November, 2, 2016, Plaintiff's Counsel nearly concluded all preparations for trial. Prior to reaching the Settlement, Plaintiff's Counsel had, *inter alia*: (i) conducted an exhaustive investigation into Plaintiff's claims; (ii) conducted expedited discovery and moved for a preliminary injunction to enjoin the Merger; (ii) researched and prepared two detailed complaints; (iii) prevailed on

Defendants' three motions to dismiss; (iv) engaged in significant discovery efforts with Defendants and non-parties; (v) obtained, organized, and analyzed approximately 156,000 pages of documents produced by Apple Ten, Defendants and third parties; (vi) prepared for, took, or defended the depositions of ten fact witnesses, including depositions of nine Defendants and the Plaintiff; (vii) prepared for, took, or defended the depositions of four experts; (viii) engaged in efforts to resolve numerous discovery disputes with Defendants; (ix) consulted with experts, two of whom produced comprehensive expert reports, and conducted extensive expert analysis and discovery; and (x) filed numerous pretrial motions and submissions, including motions *in limine*, *Daubert* motions and trial deposition and exhibit designations.[3]

On November 2, 2016, twelve days before trial was scheduled to commence, the Parties participated in a second mediation with Judge Novak. Only after a second full day of mediation, with the trial looming just days ahead, did the Parties agree to settle.

The accompanying Declaration provides extensive detail regarding the efforts undertaken by Plaintiff and his counsel on behalf of Apple Ten and its former shareholders. For the sake of brevity and to avoid repetition, Plaintiff respectfully refers the Court to the Declaration for a detailed discussion of the procedural history of the Action.

## III.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Standards for Final Approval of a Derivative Settlement

Pursuant to Federal Rule of Civil Procedure 23.1, the settlement of a shareholder derivative action requires court approval. *See* Fed. R. Civ. P. 23.1. Notice of a proposed derivative settlement must be given to shareholders in the manner that the court orders. Rule

---

[3] At the time of the Settlement, counsel for Plaintiff was also preparing oppositions to Defendants' motions for summary judgment, Plaintiff's pretrial brief, and proposed jury instructions, which were due to be filed November 4, 2016, November 7, 2016, and November 9, 2016, respectively. Decl. ¶¶ 93, 100.

23.1(c). "Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable." *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986).

"The Fourth Circuit in *Jiffy Lube* provided district courts with a two level analysis applicable in evaluating a settlement's 'fairness' and 'adequacy.'" *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)). A proposed settlement is "fair" if it "was reached as a result of good-faith bargaining at arm's length, without collusion." *Burke v. Shapiro, Brown & Alt, LLP*, No. 3:14-cv-838, 2016 WL 2894914, at *3 (E.D. Va. May 17, 2016) (Novak, J.). To make that determination, the Court considers the following factors:

> (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding settlement negotiations; and (4) the experience of counsel in the area of law.

*In re Genworth Fin. Sec. Litig.*, No. 3:14-cv-682, 2016 WL 5400360, at *1 (E.D. Va. Sept. 26, 2016) (Gibney, J.) (citing *In re Jiffy Lube*, 927 F.2d at 159). When assessing the settlement's adequacy, the inquiry is focused on the substantive terms of the proposed settlement and, in particular, whether the settlement consideration is sufficient in light of the risks and costs of continued litigation. The factors to be considered are:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*In re Genworth,* 2016 WL 5400360, at *3 (quoting *In re Jiffy Lube,* 927 F.2d at 159).

Although the district court has broad discretion in approving a derivative settlement, "there is a strong initial presumption that the compromise is fair and reasonable." *In re*

*MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Moreover, in determining whether a proposed settlement is "fair, reasonable, and adequate," the Court must recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,* No. 08-cv-00271, 2012 WL 2370523, at *11 (D.S.C. June 22, 2012). In other words, a "settlement fairness hearing is not a trial, and the court should defer to the evaluation and judgment of experienced trial counsel in weighing the relative strengths and weaknesses of the parties' respective positions and their underlying interests in reaching a compromise." *DeWitt v. Darlington Cty., S.C.,* No. 11-cv-740, 2013 WL 6408371 at *4 (D.S.C. Dec. 6, 2013).

As demonstrated herein and in the accompanying Declaration, the Settlement represents an excellent result for the Apple Ten and its former shareholders and clearly satisfies the factors enumerated in *Jiffy Lube*. Accordingly, the Settlement warrants this Court's final approval.

**B.     An Analysis of the *Jiffy Lube* Fairness Factors Demonstrates That the Settlement Is Fair and Warrants Final Approval**

**1.     The Case Was Settled on the Eve of Trial**

The first *Jiffy Lube* fairness factor focuses on the posture of the litigation at the time the settlement was reached. *In re The Mills Corp.,* 265 F.R.D. at 254. The central inquiry for the Court is whether plaintiff and his counsel have "sufficiently developed the case such that they can appreciate the merits of the claims." *Muhammad v. Nat'l City Mortg.*, No. 07-cv-423, 2008 WL 5377783, at *3 (S.D. W.Va. Dec. 19, 2008).

There is no question that, at the time of the second mediation in early November, Plaintiff's Counsel had a thorough understanding of the strengths and weaknesses of the claims and defenses asserted and could make intelligent, informed appraisals of their chances of success

at trial had the Action continued to be litigated. As noted above and in the Declaration, this case was settled on the eve of trial after months of fierce adversarial litigation. The Settlement of this Action was made possible only through the significant efforts of Plaintiff's Counsel and only after the Parties had fully developed the factual record and had nearly concluded preparations for trial. The extensive efforts by Plaintiff and his counsel up to the brink of trial provided each with the necessary insight to evaluate the merits and laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement.

"This extensive and hard-fought process demonstrates an adversarial process far exceeding 'arm's length' and demonstrates that each side entered negotiations with a strong understanding of the issues in the case." *In re Genworth*, 2016 WL 5400360, at *2 (finding the parties had satisfied the first *Jiffy Lube* fairness factor where they had fully briefed the defendants' motion to dismiss, completed discovery, moved and argued for class certification, hired experts on complex factual issues, fully briefed partial summary judgment motions, briefed motions in limine, and completed trial deposition and exhibit designations). Indeed, "[t]he fact that the Settlement was reached at such an advanced stage further strengthens the presumption that the Settlement is fair and reasonable." *See, e.g.*, *In re The Mills Corp.*, 265 F.R.D. at 254 ("[I]n cases in which discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement"); *Winingear v. City of Norfolk, Va.,* No. 12-cv-560, 2014 WL 3500996, at *2 (E.D. Va. July 14, 2014) (retention of experts and taking of multiple depositions "weighed heavily in favor of settlement").

### 2. The Extent of Discovery Completed at the Time of Settlement Weighs in Favor of the Settlement's Fairness

The second *Jiffy Lube* fairness factor focuses on the extent of discovery that has been conducted to enable "the [c]ourt to ensure that the case is well-enough developed for [] [c]ounsel

and [] [plaintiff] alike to appreciate the full landscape of their case when agreeing to enter into this Settlement." *In re The Mills Corp.,* 265 F.R.D. at 254. "[I]n cases in which discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *Id.*

Plaintiff's Counsel's discovery efforts here were exhaustive and comprehensive. In addition to Plaintiff's Counsel's extensive pre-filing investigation, at the time of the Settlement, the Parties had completed fact and expert discovery and Plaintiff's Counsel had analyzed over 156,000 pages of documents obtained from Defendants and third parties and had taken the depositions of nine fact witnesses and two expert witnesses and defended two expert depositions and Plaintiff's deposition. Decl. ¶ 9. Plaintiff had also challenged a number of documents withheld by Defendants on the basis of attorney-client privilege, and Plaintiff's motion to compel the production of those documents was pending at the time the resolution was reached. Decl. ¶¶ 69-70.

In sum, this extensive discovery record provided Plaintiff's Counsel with full knowledge of the strengths and weaknesses of Plaintiff's claims, and more than sufficiently enabled the Parties to appreciate the merits of the case at the time they agreed to enter into this Settlement. Thus, the extent of discovery completed strongly supports the fairness of the Settlement. *See In re The Mills Corp.*, 265 F.R.D. at 254 ("Where, '[a]ll defendants had answered the complaint and all motions to dismiss had been ruled upon at the time of these settlements . . . [and] discovery was largely completed as to all issues and parties,' the second factor militates toward approval of settlement."); *see also In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (noting that "[t]o approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery"; rather, "it is enough for the parties

to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement").

### 3. The Circumstances Surrounding the Settlement Negotiations Support the Fairness of the Settlement

The third *Jiffy Lube* fairness factor requires the Court to consider the conditions and circumstances surrounding the settlement negotiations. *In re The Mills Corp.*, 265 F.R.D. at 255. This factor involves an "examination of 'the negotiating process by which the settlement was reached' in order to ensure 'that the compromise [is] the result of arm's-length negotiations . . . necessary to effective representation of the class's interests." *Id.* "Courts look to the number of meetings between the parties to discuss settlement, the quality of those negotiations, and the duration of time over which negotiations took place." *In re Genworth*, 2016 WL 5400360, at *2.

The Settlement is the product of months of hard-fought litigation wherein counsel became "fully informed of all pertinent factual and legal issues . . . ." *In re The Mills Corp.*, 265 F.R.D. at 255. Further, the Settlement was reached after two separate mediation sessions with Judge Novak. Decl. ¶ 8. At the conclusion of the second mediation session, Judge Novak made a proposal to resolve the Action, which the Parties separately accepted. *Id.* ¶ 103. In preparation for the mediation sessions, the Parties had submitted detailed mediation statements, including expert analyses. *Id.* ¶ 8; *In re Genworth*, 2016 WL 5400360, at *2; *see In re NeuStar, Inc. Sec. Litig.*, No. 14-cv-885, 2015 WL 5674798, at *11 (E.D. Va. Sept. 23, 2015) (citing *Jiffy Lube*, 927 F.2d at 159) (exchange of "comprehensive mediation statements and supporting evidence, including information and analyses from experts . . . indicate an arm's length negotiation").

The contentious litigation leading up to the Settlement, coupled with the fact that Judge Novak oversaw the entire settlement process, strongly supports the Settlement's fairness. *See Burke*, 2016 WL 2894914, at *3 (fairness factors satisfied where "parties engaged in extensive

and substantive settlement talks facilitated by [Judge Novak]" and "[a]t the time of settlement, [p]laintiffs were sufficiently prepared to proceed to trial, and Defendants were prepared to defend"); *see also In re The Mills Corp.*, 265 F.R.D. at 255 (finding that multiple mediation sessions supported fairness because it was apparent that the settlement was "not entered into haphazardly with an underdeveloped understanding of the merits . . . .").

### 4. The Experience of Counsel Further Supports the Fairness of the Settlement

The final *Jiffy Lube* fairness factor looks to the experience of counsel in the particular field of law. *In re The Mills Corp.*, 265 F.R.D. at 255-56. As courts in the Fourth Circuit recognize, when counsel is well-experienced in the particular are of law, "it is 'appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole,' and to find that the proposed [] settlement is fair." *Id.* Indeed, such expertise "minimizes concerns that the [s]ettling [p]arties colluded to the detriment of the class's interests." *In re MicroStrategy*, 148 F. Supp. 2d at 665.

Here, counsel for Plaintiff and Defendants are associated with well-regarded law firms and have many years of experience in litigating complex shareholder actions, which satisfies the fourth *Jiffy Lube* factor. Decl. ¶ 144; *see, e.g.*, *In re Genworth*, 2016 WL 5400360, at *3 (counsel's years of experience in securities class actions demonstrates fairness of settlement); *Burke*, 2016 WL 2894914, at *3 (extensive experience in subject matter of litigation "weighs decidedly in favor of a fair settlement"). Plaintiff's Counsel, Kessler Topaz, is among the most experienced and skilled practitioners in the shareholder and transactional litigation fields. Decl. ¶ 144; *see generally* Kessler Topaz firm resume attached as Exhibit B to Decl. Plaintiff's Counsel, Williams & Skilling, P.C., is also experienced in complex civil litigation matters, regularly prosecuting shareholder rights disputes and offering expertise and familiarity with

Virginia state and federal courts and practices in this District. *See generally* Williams & Skilling, P.C. firm resume attached as Exhibit A to the Declaration of Charles L. Williams in Support of Plaintiff's Motion for Award of Attorneys' Fees and Payment of Litigation Expenses and to Approve Plaintiff's Case Contribution Award. This Court saw Plaintiff's Counsel in action at the hearings held for Plaintiff's motions for expedited discovery, for a preliminary injunction, in opposition to Defendants' motions to dismiss, and regarding Plaintiff's challenge to certain of Defendants' privilege designations.

Defendants were represented by McGuireWoods LLP and Hogan Lovells US LLP, two nationally and internationally recognized law firms with vast resources and experience in defending complex shareholder litigation, further weighing in support of the Settlement. *See In re Genworth*, 2016 WL 5400360, at *3 ("The defendants' law firms are also national firms with deep experience in securities litigation, further demonstrating the fairness of the Settlement currently before the Court").

The fourth *Jiffy Lube* factor is met where, as here, counsel "are highly experienced in the field" and the decision to settle the action was the "product of thorough exploration and deliberation." *In re the Mills Corp.,* 265 F.R.D. at 255.

C. **An Analysis of the *Jiffy Lube* Adequacy Factors Demonstrates That the Settlement Is Adequate and Warrants Final Approval**

While the fairness prong is concerned with the procedural propriety of the proposed settlement, the "adequacy prong focuses on the agreement's substantive propriety." *In re Am. Capital S'holder Derivative Litig.*, No. 11-2424, 2013 WL 3322294, at *3 (D. Md. June 28, 2013). Further, in connection with its review of the settlement's adequacy, the court "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *Id.*

Here, the Settlement provides a $32 million cash benefit that will go directly to Apple Ten's former shareholders and will rank as the largest derivative settlement ever in the Fourth Circuit. By way of comparison to settlements of other complex shareholder litigation, the Settlement Amount well exceeds the median recovery of $6.1 million in securities class action settlements nationally in 2015. *See* Laarni T. Bulan, et al, *Securities Class Action Settlements, 2015 Review and Analysis* (Cornerstone Research 2016) ("Cornerstone Research"), at 6. Moreover, nearly 50% of the securities class action settlements approved nationally in 2015 settled for less than $5 million, and 80% settled for less than $25 million. *Id.* In addition, as discussed herein, the recovery of 15% of Plaintiff's recoverable damages dwarfs the median recovery in securities class action settlements nationally, which in 2015 was 1.8% of estimated damages (and just 1.7% in cases with estimated damages between $125 million and $249 million). The Settlement Amount also well exceeds the median securities class settlement in this Circuit ($8.4 million) as well as the median percentage of estimated damages recovered in this Circuit (1.9%) in 2015. *See* Cornerstone Research at 22. Given that "[t]he most important factor [in evaluating a settlement] is a comparison of the terms of the proposed settlement with the likely recovery that the plaintiffs would realize if they were successful at trial," this factor strongly supports approval of the Settlement. *Kirven v. Cent. States Health & Life Co.*, No. 11-cv-2149, 2015 WL 1314086, at *4 (D.S.C. Mar. 23, 2015).

### 1. The Relative Strengths of Plaintiff's Case on the Merits and the Risks of Establishing Liability and Damages Favor Approval

The first and second *Jiffy Lube* adequacy factors "require[] the court to 'weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in the settlement.'" *In re Genworth*, 2016 WL 5400360, at *3. There is no question that shareholder derivative actions are "notoriously difficult and unpredictable." *Zimmerman*, 800 F.2d at 392. Indeed, "the

odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995). This Action is no different. As discussed in the Declaration, while Plaintiff was confident in the merits of his claims, he would still have had to overcome numerous defenses to overcome summary judgment motions or to ultimately recover at trial.

### a.    Risks in Establishing Liability

Plaintiff faced significant hurdles to establishing Defendants' liability. To succeed at trial on his breach of fiduciary duty claim against the Apple Ten Board, Plaintiff would have needed to prove that the conduct of the Apple Ten Board members in connection with their negotiation and approval of the Merger was not entitled to the business judgment protections of Virginia Code § 13.1-690, *i.e.,* that Defendants had acted in bad faith. Had the case not settled, Defendants' primary defense to liability would have been that they operated under (and were entitled to) the protection of Virginia's business judgment rule. *See* Va. Code § 13.1-690; *Willard, ex rel. Moneta Bldg. Supply, Inc. v. Moneta Bldg. Supply, Inc.*, 515 S.E.2d 277, 284 (Va. 1999) ("[A] director's discharge of duties is not measured by what a reasonable person would do in similar circumstances or by the rationality of the ultimate decision."). Under Virginia's business judgment rule, a director need only act "in accordance with his good faith business judgment of the best interests of the corporation." Va. Code § 13.1-690(A). Thus, overcoming the Virginia business judgment rule is considered to be a significant challenge, as courts in Virginia give great deference to decisions made by directors, presuming that they "act on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the corporation." *Poth v. Russey*, 281 F. Supp. 2d 814, 826 (E.D. Va. 2003). This challenge is even more difficult to overcome where, as here, a director purports to rely on

information and opinions from experts (such as financial advisors and corporate attorneys) as expressly permitted by Va. Code § 13.1-690(B). *See Willard*, 515 S.E.2d at 285.

At the preliminary injunction proceedings, the Court underscored the high hurdles Plaintiff would need to overcome to prove liability:

> ***And what you have got here is I think good arguments that it was a reasonable exercise of the business judgment of the directors.*** You have got the appointment of the special committee, which consists of non-Knight members. You have got the selection of Citibank as an adviser, the selection of the law firm of McGuire, Woods, Battle and Boothe to handle the thing, which is I think a fair selection for a company here. The exclusion of Glade Knight from the process. The negotiations that went on with Apple Hospitality that, you know, maybe they could have negotiated harder, maybe they couldn't have. ***But there was negotiation. It wasn't just a rubber stamp.*** You have got the go shop after a purchaser is selected, which is, you know, it is true that I suppose in some circumstances a go shop that is after a deal is hatched is less likely to succeed, but if the deal was way off the mark, the go shop is going to raise the price some.

Prelim. Inj. Hr'g Tr. 125:9 – 126:1.

To counter these arguments, Plaintiff would have pointed to evidence he obtained through discovery, along with the expert testimony of Professor Guhan Subramanian, an expert in M&A negotiations/corporate governance, to show that the Special Committee failed to engage in a fully informed negotiation process and ignored the advice of its advisors, which resulted in their failure to achieve a fair price for Apple Ten and its shareholders. Decl. ¶ 108. While Plaintiff believes this evidence was significant and compelling, Defendants' arguments nevertheless created a substantial risk that either the Court or a jury could find that their actions were insulated from liability.

Plaintiff also faced significant challenges in establishing that the Special Committee breached their fiduciary duties to Apple Ten shareholders by failing to properly value Apple Ten and achieve a fair price through the merger. Defendants would have argued to the jury that, under Virginia law, directors are not required to "get[ ] the best price for the stockholders at a

sale of the company." *DCG&T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 587 (E.D. Va. 2014) (explaining Virginia does not follow Delaware's seminal decision in *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173, 182 (Del. 1986), which requires a board to maximize shareholder value in any change of control transaction).

Similarly, *Willard*, the seminal case in Virginia addressing derivative claims for breach of fiduciary duty in the merger context, was a known problem for Plaintiff from the outset of the case because of its director-friendly holding. As this Court noted during the preliminary injunction hearing, "***Willard is a big problem for the plaintiff*** in this case because essentially *Willard* says you can give the company away to your son for a lot less than somebody else is offering, and we are not going to look behind that to see whether there is more money available." Prelim. Inj. Hr'g Tr. 36:11-16 (emphasis added). Defendants would have argued that the "fair price" Plaintiff sought could not be supported because it falls outside the range provided by Apple Ten's financial advisor Citi.

Through summary judgment and trial, Defendants would have continued to challenge Plaintiff's ability to prove any Defendant's liability. Defendants would have argued that Glade Knight excluded himself from the Special Committee's negotiations, and abstained from voting on the Merger. Defendants likely would have emphasized to a jury that the Special Committee retained Citi, a leading financial institution, to advise them, as well as McGuireWoods, who provided them with independent advice. The Special Committee members would likely have argued that they were not receiving any of the windfall payments in connection with the Merger.

While Plaintiff believed that he had responses to each of these defenses, he recognized that a jury, this Court, or an appellate court may not agree with him. Plaintiff's Counsel expected to use their M&A negotiation expert, Professor Subramanian, to be their primary

vehicle for introducing certain key concepts and topics, such as the utility (or lack thereof) of having a "go-shop" in a related-party deal like the Merger, as well as other corporate fiduciary duties and protections contained in Apple Ten's corporate documents and charters. Decl. ¶ 108. In light of Defendants' pending motion to exclude Professor Subramanian's testimony, however, Plaintiff could not be certain of the extent to which he could make use of that testimony at trial. Further, at trial, Plaintiff would have had to rely on the transcribed deposition testimony of certain key witnesses, like Jung, the representative from Citi who assisted the Special Committee in its negotiations, and Kieske, the representative from Wells who assisted Apple Hospitality with its negotiations, which may have been less compelling to a jury than live testimony, and would have afforded Defendants the right to counter-designate testimony from these same witnesses. *Id.* ¶ 109. Further, all of the fact witnesses who were available for live testimony and expected to testify were adverse to Plaintiff. In addition, the Parties' motions *in limine* were partially briefed, and until they were fully briefed and decided, Plaintiff could not be certain that all the evidence underpinning Plaintiff's ideal trial narrative would be available to introduce at trial. *Id.* ¶ 110.

### b.      Risks in Ability to Prove Damages

At trial, Plaintiff would have sought two distinct forms of monetary damages. First, Plaintiff would have sought an additional $1.92 per Apple Ten share in merger consideration (an aggregate $165 million). Second, Plaintiff would have sought disgorgement of the portion of the $65 million paid to defendant Glade Knight and other culpable Defendants upon the conversion of Glade Knight's Class B shares. Each of these damage models had its own strengths and weaknesses.

First, to prove that Apple Ten's shareholders were entitled to any increased merger consideration, Plaintiff would have needed to establish a breach of duty by the Special Committee charged with protecting their interests. As discussed above, this would not have been an easy task. *Id.* ¶ 116.

Second, assuming that Plaintiff was able to prove that the Special Committee breached their duty to protect the Apple Ten shareholders, Plaintiff would have needed to prove that the merger price was in fact unfair. Based upon analyses prepared by Chad Coffman, CFA, Plaintiff's corporate entity valuation and damages expert, the Merger undercompensated Apple Ten shareholders by $1.92 a share, *i.e.*, the fair price for Apple Ten was $12.77 per share, almost 20% more than the actual Merger consideration. However, Citi, the Special Committee's financial advisor, opined that the merger consideration was fair. Plaintiff would have needed to convince a jury that Citi's analysis was wrong. Plaintiff would have argued that Citi blessed the inadequate merger consideration to enable it to receive the $4 million success fee it would be entitled to only upon the successful consummation of the Merger. But Plaintiff would have needed to convince the jury that an impartial Wall Street investment bank would give its professional opinion that the price paid was fair when it was actually undervalued by 20%. *Id.* ¶¶ 117-18.

Mr. Coffman's expert views were also hotly contested by Defendants' damages expert, Mr. Gavin, who opined that the consideration paid to Apple Ten shareholders was fair and that Mr. Coffman's analysis was wrong. *Id.* ¶ 82. The inevitable "battle of the experts" at trial creates substantial litigation risk because there can be no assurance which party's expert a jury will find more persuasive and, in reality, most jurors are not likely to be attuned to complex matters of corporate valuation. *See In re The Mills Corp.*, 265 F.R.D. at 256 ("the damages issue

would have become a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury"); *In re MicroStrategy*, 148 F. Supp. 2d at 667 ("These risks, inherent in the divergent expert testimony reasonably anticipated in a case of this sort, further support the adequacy" of the proposed settlement). Had Defendants' damages arguments been accepted, damages in this case could have been greatly reduced or even eliminated.

Defendants also argued at summary judgment that to prove that Defendants' alleged breaches of fiduciary duty in fact caused his damages, Plaintiff was required to prove there was a viable market for Apple Ten shares at $12.77 per share, relying on the Virginia Supreme Court's decision in *SunTrust Bank v. Farrar*, 675 S.E.2d 187, 191 (Va. 2009). Plaintiff would have argued that since Defendants intentionally avoided contacting viable alternative bidders for Apple Ten until a merger agreement was already signed, *SunTrust* was inapplicable and factually distinguishable. Plaintiff recognizes, however, that if the Court were to credit Defendants' argument, Plaintiff's ability to prove (and recover) damages would have been severely undercut.

Ultimately, while Plaintiff was willing and ready to try the case, he believed that his chances of winning a $165 million jury verdict posed significant challenges.

### (2) Unjust Enrichment

Plaintiff also sought disgorgement of the approximately $65 million that Glade Knight received in return for the Class B Shares he held in Apple Ten, the recovery of which was far from certain. As Apple Ten disclosed in its July 15, 2015 Proxy Statement, approximately $25 million of the $65 million was set to be distributed to various members of Apple Ten management, including defendants Justin Knight, Buckley, Peery, Gathright and McKenney. Discovery did not support strong claims against any of these individuals except Glade Knight (who received approximately $40 million of the $65 million), Justin Knight ($4 million) and General Counsel Buckley ($2 million), such that only $46 million of the $65 million would have

been available for potential recovery. Of course, success on this $46 million claim was far from certain.

Glade Knight did not participate in the Merger negotiations or vote to approve the Merger, and, in reality, the higher the price paid to Apple Ten shareholders in the Merger, the more money he would have made on the deal. Plaintiff would have needed to prove that Glade Knight was a silent puppeteer behind a sham Special Committee process, and that his son and in-house counsel conspired to do his bidding. Plaintiff hoped to succeed on this claim, but recognized that he would have needed to convince a jury that Glade Knight's recusal from the negotiations was inadequate, and that he was not entitled to receive *any* bonus compensation for setting up and selling a profitable REIT. Decl. ¶¶ 121-22.

### (3) The Settlement Represents A Substantial Percentage of Plaintiff's Available Damages

The risk that the jury, or the Court during summary judgment or pre-trial or post-trial motion practice, would credit Defendants' damages position over Plaintiff's had considerable consequences in terms of the amount of likely recovery for Apple Ten and its shareholders, even assuming liability was proven. Instead of risking a lower recovery (or no recovery) after trial, Plaintiff settled for $32 million, an amount that equates to approximately 15% of Plaintiff's recoverable damages. *Id.* ¶ 123. Indeed, the $32 million Settlement is appropriately viewed against Plaintiff's likelihood of success on both of Plaintiff's damage theories which represent 15% of Plaintiff's "top line" damages of $211 million ($165 million + $46 million). *Id.* This Court has regularly approved settlements in other shareholder cases that have resulted in recovery of a comparable or smaller percentage of estimated damages. *See, e.g., Knight*, No. 3:14-cv-00067-JAG (E.D. Va. Sept. 15, 2015) (finding a recovery of 7% -13% of plaintiff's top line damages to be a fair, reasonable and adequate result); *In re Genworth* (approving securities

class action settlement amounting to 15% of recoverable damages); *In re MicroStrategy*, 148 F. Supp. 2d at 664-68 (approving settlement amounting to 15% of recoverable damages); *In re MicroStrategy*, 148 F. Supp. 2d at 667 n.22 (citing *Orman v. Am. Online, Inc.*, No. 97-cv-264-A (E.D. Va. Dec. 14, 1998) which approved a $35 million settlement amounting to approximately 5% of the potential recovery).

Plaintiff submits that the $32 million perhaps more accurately represents a recovery of approximately 10% of Plaintiff's more difficult claim seeking an additional $165 million in increased merger consideration ($16 million), plus an additional 35% of Plaintiff's slightly stronger $46 million claim against the Knights and defendant Buckley (another $16 million). Under any analysis, however, Plaintiff submits that the Settlement amount, measured against Plaintiff's likelihood of success at trial, is more than fair, reasonable, and adequate.

### 2. The Anticipated Duration and Expenses of Additional Litigation Supports Approval

The third *Jiffy Lube* adequacy factor requires consideration of the additional time and expense that would be necessary if the litigation proceeded through trial. *See In re The Mills Corp.*, 265 F.R.D. at 256. This factor is based on the public policy of conserving judicial resources and "the certainty that [avoiding] unnecessary and unwarranted expenditure of resources and time benefit[s] all parties." *Id.* This factor also weighs in favor of approving the Settlement.

The Action was just twelve days from trial when the Parties reached the Settlement. That said, if taken to trial, it would have required significant additional preparation, time, and expense by both sides, as well as substantial Court resources. As the mediator Judge Novak acknowledged in *Burke*, "a trial on the merits could have dragged on and consumed many more resources." *Burke*, 2016 WL 2894914, at *3. And, as this Court acknowledged in a recent

complex securities class action matter, "[t]aking this case through trial and any appeals would involve a great deal of effort and expense, especially in light of the unknown outcome of such actions." *In re Genworth*, 2016 WL 5400360, at *4.

Additionally, "[n]or is it likely that this litigation would have ended with a jury verdict; there is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs." *In re MicroStrategy,* 148 F. Supp. 2d at 667. A jury verdict for either side would almost certainly have resulted in post-trial motions and appeals. And the uncertainty arising from a potentially adverse appellate decision further supports the Settlement. This is especially acute here, where the issues of law were complex and Virginia law is not extensively developed. By way of example, Plaintiff faced appellate risk related to the Court's decision that Virginia Code § 13.1-672.1(A)(1) does not impose a continuous ownership requirement for the maintenance of derivative proceedings. Plaintiff also faced appellate risk related to the Court's decision that Plaintiff's simultaneous ownership of Apple Hospitality and Apple Ten stock did not rise to the level of "economic antagonism" that would render Plaintiff an inadequate derivative representative under Rule 23.1. While Plaintiff is confident that the Court correctly decided these issues, the uncertainty of appellate litigation, and the costs associated with litigating a jury verdict through appeals, heavily favors approval of the Settlement.

The Settlement provides a substantial, certain, and immediate recovery for Apple Ten's former shareholders without the risks, duration, and expense of continuing litigation. In other words, "the old adage, 'a bird in hand is worth two in the bush' applies with particular force in this case." *In re MicroStrategy*, 148 F. Supp. 2d at 667.

### 3. The Solvency of Defendants and Likelihood of Recovery of a Litigated Judgment Supports the Adequacy of the Settlement

The fourth *Jiffy Lube* adequacy factor requires the Court's consideration of the Defendants' ability to pay. With respect to this factor, Plaintiff believes that Defendants would have the ability to pay a judgment in excess of $32 million. However, as Judge Novak acknowledged in *Burke*, "while the Court has no reason to doubt [d]efendant's ability to pay a litigated judgment, it takes nothing for granted in the present economy." *Burke,* 2016 WL 2894914, at *3.

### 4. The Lack of Opposition to the Settlement Weighs in Favor of its Approval

The final *Jiffy Lube* adequacy factor for the Court to consider is the degree of opposition to the Settlement, "as expressed directly or by failure to object." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). "[A]n absence of objections . . . weighs significantly in favor of the settlement's adequacy." *In re The Mills Corp.*, 265 F.R.D. at 257.

Strategic Claims Services, the claims administrator approved by this Court, mailed 23,225 copies of the Court-approved Notice of Pendency and Settlement of Derivative Action ("Notice") to former Apple Ten shareholders as of September 1, 2016. Decl. ¶ 132; Bravata Aff. ¶¶ 4-5. The list of recipients who received the Notice was provided by David Lerner Associates, Apple Ten's exclusive broker. Decl. ¶ 46. The Notice informed former shareholders of the material terms of the Settlement, their right to object to the Settlement, and the deadline for doing so. *Id.* ¶ 131. While the deadline set by the Court for former Apple Ten shareholders to object to the Settlement has not yet passed, to date there have been no objections to the Settlement, and Plaintiff's Counsel is aware of only one potential objector. Further, Plaintiff's Counsel has fielded calls from over 150 former Apple Ten shareholders who received the Notice. *Id.* ¶ 137. During those phone calls, no shareholders have expressed disapproval of the

Settlement or its terms. In fact, the vast majority of former Apple Ten shareholders have expressed their explicit approval of the Settlement, and multiple callers have even indicated their gratitude and appreciation for Plaintiff's and Counsel's efforts in achieving the Settlement. *Id.*

Accordingly, this final adequacy prong strongly weighs in favor of the Settlement's adequacy and approval. *See In re The Mills Corp.*, 265 F.R.D. at 258 (noting that the lack of any objectors to a settlement "gives the Court a great deal of confidence in the settlements adequacy").

## IV. THE PROPOSED PLAN OF DISTRIBUTION IS FAIR AND REASONABLE

Approval of the proposed distribution of the Settlement proceeds is governed by the same standards of fairness and reasonableness applicable to the Settlement as a whole. *See, e.g., In re MicroStrategy,* 148 F. Supp. 2d at 668 ("To warrant approval, the plan of allocation must also meet the standards by which the partial settlement was scrutinized – namely, it must be fair and adequate."). However, "[t]he proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *In re The Mills Corp.,* 265 F.R.D. at 258. Here the Plan of Distribution is fair and reasonable, and is consistent with the damages Plaintiff alleged were recoverable in the Action.

The Plan of Distribution was developed by Plaintiff's Counsel in consultation with their settlement advisor, Paul Mulholland, CPA, President of Strategic Claims Services. Decl. ¶ 126. Under the proposed Plan of Distribution, each Authorized Claimant will receive a *pro rata* allocation of the Net Settlement Fund (less certain fees and expenses) based on the percentage of Apple Ten shares each Authorized Claimant held as of September 1, 2016 (the date the Merger closed) out of the total number of Apple Ten shares then held by all Authorized Claimants. *Id.* Specifically, following approval of the Settlement and the Effective Date, Authorized Claimants

shall be paid their *pro rata* portions of the Net Settlement Fund (plus any interest earned thereon) after deduction of (i) any Fee and Expense Award to Plaintiff's Counsel, including any Case Contribution Award to Plaintiff; (ii) certain costs associated with the administration of the Settlement ("Notice and Administration Expenses"); (iii) taxes; and (iv) other fees and expenses authorized by the Court (the "Net Settlement Fund"). Decl. ¶ 127. Strategic Claims will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the approved Plan of Distribution. To date, there have been no objections to the Plan.

Accordingly, for all of the reasons discussed in this memorandum and in the Declaration, the Plan is fair and reasonable and should be approved. *See In re MicroStrategy*, 148 F. Supp. 2d 654, 668-69 (approving a plan of allocation as fair and reasonable that distributed damages to the class on a pro rata basis "as determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all authorized claimants."); *see also In re Genworth*, 2016 WL 5400360, at *4 (holding the same).

## V.    NOTICE TO FORMER APPLE TEN SHAREHOLDERS SATISFIED THE REQUIREMENTS OF RULE 23.1 AND DUE PROCESS

Pursuant to Rule 23.1(c), "Notice of a proposed settlement . . . must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). To satisfy due process, the notice "must be sufficiently informative and give sufficient opportunity for response." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993). In terms of content, the notice "must convey the nature of the action and claims, the opportunity and manner of opting out, the binding effect of the judgment, and the opportunity to enter an appearance through an attorney" in "plain, easily understood language." *Burke*, 2016 WL 2894914, at *4. The Notice more than satisfies these requirements.

In the Court's December 8, 2016 Order granting preliminary approval (ECF No. 150), the Court approved the form of Notice, found that the mailing and distribution of the Notice met the due process requirements of Rule 23.1, and found the Notice was the "best notice practicable under the circumstances . . . ." The Notice advised former Apple Ten shareholders of the Settlement and included a summary of the Action's procedural history, the Parties' contentions, the issues involved, the reasons each Party recommended settlement, the terms of the Settlement, that Plaintiff's Counsel was seeking a fee award of one-third of the Gross Settlement Fund and Plaintiff was requesting an incentive award in the amount of $15,000.00, the Settlement Hearing date, and advised shareholders of their right to object and the consequences of not doing so. Decl. ¶ 131.

Accordingly, the Court-approved Notice, which was mailed to all Settlement Members and posted on the website of Strategic Claims Services, met its purpose of "fairly appris[ing] the prospective [Settlement Members] of the terms of the proposed settlement and of the options that are open to them . . . ." *Bell Atl. Corp.*, 2 F.3d. at 1318; *see also In re MicroStrategy*, 148 F. Supp. 2d at 669 (finding that notice that was mailed to all potential class members and published online was "tailored to reach as many members of the class as practicable and therefore meets [] due process requirements").

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement and the proposed Plan of Distribution.

Dated:  February 22, 2017                    **WILLIAMS & SKILLING, P.C.**


/s/ Charles Williams
Charles Williams (VA Bar #: 23587)
cwilliams@williamsandskilling.com
4801 Radford Avenue, Suite A

Richmond, VA 23230
Telephone: (804) 447-0307
Facsimile: (804) 447-0367

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Lee Rudy
Robin Winchester
Geoffrey C. Jarvis
Matthew L. Mustokoff
Joshua A. Materese
Grant D. Goodhart
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (267) 948-2512
Email: lrudy@ktmc.com
        rwinchester@ktmc.com
        gjarvis@ktmc.com
        mmustokoff@ktmc.com
        jmaterese@ktmc.com
        ggoodhart@ktmc.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on February 22, 2017, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

**WILLIAMS & SKILLING, P.C.**

/s/ Charles Williams
Charles Williams (VA Bar #: 23587)
4801 Radford Avenue, Suite A
Richmond, VA 23230
Telephone: (804) 447-0307
Facsimile: (804) 447-0367
Email: cwilliams@williamsandskilling.com